Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

NOV 0 3 2021
10:50 a.m.
Margaret Botkins, Clerk
Cheyenne

# UNITED STATES DISTRICT COURT

for the

District of Wyoming

____Civil_____ Division

| | | |
|---|---|---|
| David Lee Shulick | ) | Case No. ___21-CV-202-S___ |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ✓ Yes ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| –v– | ) | |
| | ) | |
| See Attached | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | | |

## COMPLAINT FOR A CIVIL CASE

I.     **The Parties to This Complaint**

   A.     **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | David Lee Shulick |
| Street Address | P.O. Box 247 |
| City and County | Rawlins/Carbon |
| State and Zip Code | Wyoming  82301 |
| Telephone Number | 517-420-5780 |
| E-mail Address | davidshulick@yahoo.com |

   B.     **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | State of Wyoming |
| Job or Title *(if known)* | |
| Street Address | 200 W. 24th St., Suite 124 |
| City and County | Cheyenne, Laramie |
| State and Zip Code | Wyoming  82001 |
| Telephone Number | 307-777-7434 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | State of Wyoming Department of Corrections |
| Job or Title *(if known)* | |
| Street Address | 1934 Wyott Drive, Suite 100 |
| City and County | Cheyenne, Laramie |
| State and Zip Code | Wyoming  82002 |
| Telephone Number | 307-777-7208 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | State of Wyoming Department of Workforce Services |
| Job or Title *(if known)* | |
| Street Address | 5221 Yellowstone Rd. |
| City and County | Cheyenne, Laramie |
| State and Zip Code | Wyoming  82002 |
| Telephone Number | 307-777-7261 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Wyoming Administration & Information - Human Resources |
| Job or Title *(if known)* | |
| Street Address | 2323 Carey Ave. |
| City and County | Cheyenne. Laramie |
| State and Zip Code | Wyoming  82002 |
| Telephone Number | 307-777-7659 |
| E-mail Address *(if known)* | |

**II.** **Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.** **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Section 504 of the Rehabilitation Act of 1973, as codified, U.S.C. §§ 701, et seq.
Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634
Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117
Family Medical Leave Act of 1993, as codified, 29 U.S.C. §§ 2611 to 2654
Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17

**B.** **If the Basis for Jurisdiction Is Diversity of Citizenship**

1.  The Plaintiff(s)

a.  If the plaintiff is an individual

The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

b.  If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.  The Defendant(s)

a.  If the defendant is an individual

The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

    b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under

the laws of the State of *(name)* _____, and has its

principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

**See attached "Statement of Claims"**

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

**See attached "Relief"**

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     11/02/2021

Signature of Plaintiff

Printed Name of Plaintiff     David Lee Shulick

### B.     For Attorneys

Date of signing:     _____

Signature of Attorney     _____

Printed Name of Attorney     _____

Bar Number     _____

Name of Law Firm     _____

Street Address     _____

State and Zip Code     _____

Telephone Number     _____

E-mail Address     _____

## DEFENDANTS

**State of Wyoming, State Government**

**State of Wyoming Department of Corrections, State Government agency**

**State of Wyoming Department of Workforce Services, State Government Agency**

**Wyoming Administration & Information - Human Resources, State Government Agency**

1

## <u>WYOMING STATUTE AND TORT CLAIMS UNDER SUPPLEMENTAL JUSRISDICTION</u>

**Wyoming Occupational Health and Safety Act, as codified, W.S. §§ 27-11-101 -- 27-11-114**

**Intentional Infliction of Emotional Distress**

**Breach of Contract - Employment**

**Promissory Estoppel**

**Retaliatory Discharge in Violation of Public Policy**

## EXHAUSTION OF REMEDIES

1.  Plaintiff filed an EEOC complaint alleging ADEA, ADA, and Title VII violations against the Defendant WDOC.  Plaintiff has exhausted his required administrative remedies and was issued a Right-to-Sue notice from the EEOC on August 9, 2021 (attached as "Exhibit A").

## STATEMENT OF CLAIMS

2.  Plaintiff David Lee Shulick (Plaintiff) is a citizen of the United States and was at all relevant times a resident of the State of Wyoming, County of Carbon, and City of Rawlins.

3.  Plaintiff was a Correctional Officer employed by the State of Wyoming Department of Corrections (WDOC) for over nine (9) years.  Plaintiff was a permanent employee, not an at-will employee.  Plaintiff was assigned to a reasonable accommodation post, in which he worked for approximately the last three-and-a-half (3 1/2) years of his employment.  Plaintiff was assigned to this reasonable accommodation post because of his known disabilities, documented with the WDOC.  Plaintiff had no formal discipline and no previous negative performance evaluations.

4.  Plaintiff previously filed internal EEO complaints as well as two EEOC complaints because of Defendant WDOC's and its managerial agents' violations of the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and Title VII the Civil Rights Act. The most recent EEOC action is included with the claims herein.

5.  Beginning in June of 2019, the WDOC, by and through its managerial agents, again engaged in a continual series of retaliatory, discriminatory, and harassing behaviors, creating a hostile work environment, deliberately aggravating Plaintiff's known disability conditions.

6.  Despite Plaintiff's many verbal and written EEO complaints and environmental safety complaints, the prohibited behavior only became more frequent and more abusive, causing Plaintiff several episodes of debilitating physical and psychological impairment due to his known disability conditions.

7.  On April 20, 2020, the WDOC placed Plaintiff on Administrative Review Leave (ARL) after imposing new Covid-19 measures, arguing that it could not reasonably accommodate Plaintiff's

disability conditions in his own occupation, and failed to fulfill its duty to engage in the ADA interactive process, terminating the Plaintiff's employment on June 23, 2020.

8. State of Wyoming administrative, managerial, and supervisory agents participated in discriminating, harassing, retaliating, and perpetuating such actions against the Plaintiff during the period in question, creating a hostile work environment, significantly damaging the Plaintiff's physical and psychological health through their unlawful actions up to and including terminating Plaintiff's long-term employment, causing Plaintiff to suffer significant financial damages as well. By and through their unlawful actions, these State of Wyoming agents did create liability for Defendants State of Wyoming, Wyoming Department of Corrections (WDOC), Wyoming Department of Workforce Services, and Wyoming Administration & Information - Human Resources in violation of the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Rehabilitation Act, the Civil Rights Act, the Family Medical Leave Act, and substantially related State of Wyoming statute and tort actions included with these claims under supplemental jurisdiction.

## FIRST CAUSE OF ACTION

**For Disability Discrimination, Retaliation for Plaintiff's Opposition to Defendants' Unlawful Discrimination, Retaliation for Plaintiff's Participation in Discrimination Proceedings, Adverse Employment Actions, Failure to Continue the Interactive Process, and Failure to Offer Reasonable Accommodation in Violation of the ADA—Against Defendants State of Wyoming, Wyoming Department of Corrections, and Wyoming Administration & Information - Human Resources.**

9. Plaintiff incorporates the allegations set forth in paragraphs 1 through 8, inclusive, as if fully set forth herein.

10. This cause of action is brought against the above listed Defendants to enforce Plaintiff's rights under the Americans with Disabilities Act (ADA) for disability discrimination, retaliation for Plaintiff's opposition to Defendants' unlawful discriminatory actions, retaliation for Plaintiff's

4

participation in discrimination proceedings, adverse employment actions, failure to continue in the interactive process, and failure to offer reasonable accommodation.

11.  Plaintiff has physical and psychological impairments that substantially limit one or more of Plaintiff's major life activities, and Plaintiff could perform the essential functions of his job with or without accommodation, defining Plaintiff as a qualified individual under the ADA.

12.  Plaintiff provided documentation to Defendant WDOC of his disability conditions through Family Medical Leave Act (FMLA) requests as well as through his reasonable accommodation requests.

13. Administrative and managerial agents of Defendant WDOC knew Plaintiff's disability conditions and were involved in Plaintiff's first reasonable accommodation request of February 9, 2018.

14.  On October 16, 2018, the WDOC Director referred Plaintiff to the WDOC Human Resources Manager (HRM) to administer Plaintiff's reasonable accommodation request of February 9, 2018.  Due to Plaintiff's disability conditions, Plaintiff spoke with the WDOC HRM by teleconference from his residence on October 29, 2018, and again on December 17, 2018.  The Wyoming State Penitentiary (WSP) Deputy Warden (DW) and WSP HRM were both present during the first phone conference in October, but only the WDOC HRM and WSP HRM were present during the second phone conference in December.  All three had intimate knowledge of Plaintiff's disability conditions.

15.  On or about December 31, 2018, the WDOC Director granted Plaintiff's reasonable accommodation request, in writing, based on Plaintiff's disability conditions.  This reasonable accommodation allowed Plaintiff to remain working exclusively in a regular post, in which he had already been working since November of 2016 while being able to perform the essential functions of his job in that post.

16.  On June 6, 2019, Plaintiff applied for an open promotional position at the Wyoming State Penitentiary (his worksite).  Plaintiff's qualifications for the position exceeded the minimum

qualifications for the prospective position, and, because it was an administrative position, the prescribed duties would likely have reasonably accommodated the Plaintiff's disability conditions as Plaintiff had already been performing investigative duties at this level at the request of a Captain while Plaintiff was working in his current reasonable accommodation post.

17. On July 3, 2019, Plaintiff received notification from WDOC Human Resources staff that his application had been approved to proceed in the application process for the promotional position.  Plaintiff prepared and timely submitted the prescribed promotional packet and was scheduled for an interview on July 11, 2019.

18.  Plaintiff attended the July 11, 2019 interview with the WSP DW, WSP HRM, the WSP Major, and a Major from another WDOC facility.  During the interview, Plaintiff was badgered by the DW with questions about his "ability" to work in an "all-male" facility.  Since Plaintiff had been at WSP, an all-male facility, for several years, it was apparent that the WSP DW was specifically addressing Plaintiff's disability conditions as a condition of employment for the position (the WSP DW and WSP HRM were directly involved in Plaintiff's prior reasonable accommodation request).

19.  On July 16, 2019, WDOC Human Resources staff advised Plaintiff by email that he was not selected for the promotional position.  The position was not filled and was reposted.

20.  On July 19, 2019, Plaintiff emailed the WDOC Director requesting a review of the agency's decision not to offer him the promotional position.

21.  On July 23, 2019, the WDOC Director responded, affirming the agency's decision to deny Plaintiff the promotion.

22.  On August 23, 2019, Plaintiff reapplied to the same reposted promotional posting. Although Plaintiff received an acknowledgement of receipt of his application, he was never contacted by WSP Human Resources and allowed to compete in the selection process against the new pool of applicants.  Around the beginning of January 2020, the agency offered the promotional position to a much younger, less qualified candidate from another

6

facility.

23.  Sometime during the fall of 2019, the WSP Major changed the shifts of two Lieutenants to the Plaintiff's regular shift (6:00 p.m. - 6:00 a.m.) to work Watch Command for the facility. One of these Lieutenants had been a subject of previous EEO complaints and both EEOC complaints filed by Plaintiff, alleging harassment, discrimination, retaliation, and hostile work environment.

24.  In or around early December 2019, a Lieutenant (Watch Commander) asked Plaintiff why he was always being scheduled in the Checkpoint post.  Plaintiff advised the Lieutenant that he was on a reasonable accommodation post for medical conditions.

25.  On December 24, 2019, the same Lieutenant, in violation of the ADA and in direct opposition to the WDOC Director's written reasonable accommodation assignment, reassigned Plaintiff to another post inside the facility.

26.  Plaintiff advised the Lieutenant that the reasonable accommodation assignment was granted by the WDOC Director, but the Lieutenant refused to assign Plaintiff to his reasonable accommodation post (Checkpoint) and insisted that he assume the other post.  Plaintiff advised the Lieutenant that he was going home because his reasonable accommodation post had been assigned to another staff member.  The Lieutenant followed Plaintiff from the Roll Call Room all the way to the facility's main gate, accusing him of abandoning his post.  Plaintiff advised the Lieutenant that he would be filing a complaint with the WDOC Director's Office in Cheyenne. The Lieutenant deliberately defied the WDOC Director's reasonable accommodation assignment afforded the Plaintiff, which also included a provision that Plaintiff would not be under the direct supervision of Watch Command, which included this Lieutenant.

27.  Plaintiff contacted the WSP Major by phone shortly thereafter, informing him of the incident with the Lieutenant.  Although Plaintiff was reassigned back to his reasonable accommodation position, no investigation of this incident was conducted by WDOC management.

28. Also during this same period, the WSP Major began capriciously limiting Plaintiff's duties in his reasonable accommodation post, contrary to current and long-standing policy and

procedure, in an obvious attempt to render the Plaintiff's work irrelevant and exacerbate Plaintiff's disability conditions.  Watch Command enforced these capricious restrictions against Plaintiff.

29.  On January 2, 2020 (only nine [9] days after the incident with the Lieutenant on December 24, 2019), the WSP HRM ordered Plaintiff to report to Human Resources to take a "random drug screen."  Plaintiff contacted the WSP HRM by phone from his workstation and opposed his ordering of the drug screen as harassment for opposing the unlawful reassignment from his reasonable accommodation position by the Lieutenant.  When Plaintiff stated that he would not submit to the drug screen because it was discriminatory harassment and retaliation, the WSP HRM threatened Plaintiff's job.  Plaintiff advised the WSP HRM that any adverse action taken against him would result in an EEOC complaint and a lawsuit.

30.  Plaintiff had never used illegal substances and had no concern about a positive test, but he submitted to the drug screen because of the WSP HRM's threat to his job, and Plaintiff further opposed the ordering of the drug screen in the comments section of the testing acknowledgement form as unlawful harassment and retaliation.  Plaintiff's drug screen result was negative.

31.  Plaintiff reviewed the WDOC drug screen policy and discovered that he was exempt from random drug screen testing because of his position in the facility.  The WSP HRM's actions were in violation of WDOC policy and were deliberate unlawful retaliation, intended to harass Plaintiff because of his protected opposition to the Lieutenant's unlawfully reassigning him from his reasonable accommodation assignment only nine (9) days earlier.

32.  Despite Plaintiff's complaint of unlawful discrimination, harassment, and retaliation over the phone to the WSP HRM (a Human Resources Manager) at the time that the random drug screen was ordered, no investigation was conducted by WDOC management.

33.  On January 14, 2020, Plaintiff was approached at his workstation by a WSP Captain.  The Captain stated that he was investigating a Staff Report written by the WSP HRM regarding the

8

incident with the Plaintiff on January 2, 2020.  Plaintiff explained the nature of the incident and his opposition to the WSP HRM's ordered random drug screen of Plaintiff as unlawful harassment and retaliation in violation of the ADA.

34.  On January 22, 2020, the Captain issued Plaintiff a "Verbal Counseling" form in which the Captain characterized Plaintiff's allegations and threatening to file a complaint as "unacceptable" behavior and misconduct.  This violation of his rights caused Plaintiff severe acute symptoms of his disability conditions, leaving Plaintiff unable to manage his severe medical symptoms at work, causing Plaintiff to miss work for thirty-five (35) days, during which he used all of his accumulated sick and vacation leave, as well as disability benefits from the group benefits plan, while he was on intermittent FMLA leave.  The WDOC HRM approved this discipline with its unlawful content.

35.  On January 23, 2020, Plaintiff filed an internal EEO complaint with the WDOC Director, which included allegations of discriminatory treatment, harassment, hostile work environment, and adverse employment actions for Plaintiff's protected opposition to the discriminatory treatment from the Lieutenant's removing him from his reasonable accommodation post, the WSP HRM's ordering that Plaintiff take a random drug screen only nine (9) days after the incident with the Lieutenant, and the Captain's issuing a retaliatory disciplinary action only twenty (20) days after the drug screen incident with the WSP HRM.  Plaintiff requested an informal resolution to avoid a protracted process and further retaliation and also requested reasonable accommodation to be excused from roll call where Watch Command was exacerbating his disability conditions.  The WDOC Director did not respond to this complaint until January 31, 2020, only after Plaintiff filed yet another harassment complaint against the WSP HRM.

36.  On January 28, 2020, Plaintiff submitted his updated application for intermittent FMLA with WSP Human Resources.  On this same date, a Human Resources staff member acknowledged receipt of the updated FMLA submission.  On January 29, 2020, Plaintiff received a phone call

from his primary care provider's office, advising him that the WSP HRM had contacted them by both phone and email, challenging Plaintiff's FMLA submission even though there were no changes from the previous year's submission, to which the WSP HRM had made no previous challenge. Plaintiff resubmitted the same paperwork, and the Human Resources staff member accepted the submission and issued Plaintiff a new Notice of Eligibility for intermittent FMLA.

37.  On January 29, 2020, Plaintiff filed another complaint against the WSP HRM with the WDOC HRM, alleging that the WSP HRM's contacting Plaintiff's primary care provider and contesting Plaintiff's FMLA submission was continuing discriminatory harassment and retaliation on his part for Plaintiff's opposing the discriminatory treatment by both the WSP HRM and the Lieutenant who reassigned him from his reasonable accommodation post.

38.  On January 31, 2020, the Director responded to Plaintiff's EEO complaint of January 23, 2020.  Rather than proceed with an informal process and resolution, the Director decided to have the issuance of the counseling form action and the allegations of harassment, which were parts of the same series of unlawful discrimination, investigated separately under Defendant State of Wyoming's formal grievance and formal investigative process by the same "investigative team": the WDOC Deputy Human Resources Manager (DHRM) and the WSP DW.  The Director made no mention of investigating the WSP HRM's contacting Plaintiff's primary care provider, and he ignored Plaintiff's request for reasonable accommodation to be excused from attending roll call to alleviate Plaintiff's disability symptoms being deliberately aggravated by Watch Command.

39.  Despite being informed by Plaintiff, in writing, several times that Plaintiff was on FMLA leave (protected leave) from January 22, 2020 through on or about February 25, 2020, the WDOC DHRM brazenly attempted on several occasions between February 3, 2020 and February 13, 2020 to schedule a meeting with Plaintiff, even going so far as contacting a representative of the Wyoming Public Employees Association (WPEA) to schedule a meeting with Plaintiff.  The WPEA is not an exclusive bargaining representative of State Employees and

Plaintiff had not yet involved the WPEA in this matter.  On February 12, 2020, Plaintiff notified

the Director in writing about the WDOC DHRM's unlawful attempts to schedule Plaintiff for a

meeting while he was on protected leave, but the Director affirmed the WDOC DHRM's

deliberate harassment of Plaintiff while he was on protected leave because of his disability

conditions.

40.  On February 3, 2020, Plaintiff asked the WDOC DHRM, via email, about the status of his

reasonable accommodation request to be excused from roll call.  The WDOC DHRM never

processed Plaintiff's request.

41.  Plaintiff emailed the Director advising him that since he decided to use formal grievance

and investigative processes to address his EEO complaint of January 23, 2020 that it was more

appropriate to use the WDOC "ADA Compliance for Staff" policy as Plaintiff's complaint was an

ADA complaint.  The policy specifically states, "It is the policy of the WDOC to comply with ADA

provisions which apply to staff members."  The policy included a separate grievance procedure

that also allowed an appeal process to the State of Wyoming Office of Administrative Hearings

(OAH).  The Director responded to Plaintiff's request in writing on February 24, 2020, arguing

that the ADA Grievance Procedure was for applicants, not staff, and that the investigation of

Plaintiff's EEO complaint would proceed as he had previously indicated.  The Director's refusal

to use the ADA grievance procedure was a deliberate violation of policy to give him exclusive,

personal control over the outcome of Plaintiff's EEO complaint without the appeal rights

prescribed in the WDOC ADA policy.

42.  On March 18, 2020, the Director issued a "grievance" determination regarding the

counseling form issued to Plaintiff by the Captain, upholding the disciplinary action, and stated

that Plaintiff's claim based on protected class was still being investigated and that he would

inform the Plaintiff in another letter the outcome of the investigation.  The Director then stated

that he was going to allow the Captain to correct errors in the counseling form and reissue it.

The Director never responded to Plaintiff regarding the discrimination allegations in his

January 23, 2020 EEO complaint as he had indicated he would in his "grievance" response.

43.  On March 18, 2020, Plaintiff emailed the Director advising him that his "grievance" response was issued eight (8) business days past the prescribed deadline for the agency to respond under State of Wyoming Personnel Policy (which he insisted upon utilizing) without an agreed to extension to respond, which was neither requested by the Director nor offered by Plaintiff.  State Personnel Policy required the removal of the disciplinary action from Plaintiff's personnel file because of the Director's untimely response.  The Director refused to follow State Personnel Policy and stated that the unlawfully issued counseling action would stand.  The WPEA Executive Director (the WPEA having been requested by Plaintiff to intervene) contacted the Wyoming Administration & Information - Human Resources (A&I - HRD) Administrator, regarding the Director's violation of State Personnel Policy in this regard, and despite numerous attempts to have the Administrator order the removal of the counseling action from Plaintiff's personnel file under Defendant State of Wyoming's Personnel Policy, the Administrator took no action to comply with the State Personnel Policy and remove the discriminatory disciplinary action from Plaintiff's Personnel file, making her complicit in the Director's State of Wyoming Personnel Policy and ADA violations.

44.  On March 20, 2020, Plaintiff emailed the WSP Warden, requesting reasonable accommodation to be excused from attending roll call because the agency had begun spraying bleach throughout the facility, and the fumes from the bleach were causing Plaintiff medical distress to the point that he had to medicate himself after exposure.  Plaintiff had advised both the WSP Safety Officer and the WSP Warden in writing of his medical conditions and reactions to bleach on March 16, 2020, four (4) days previous to his request for reasonable accommodation in this regard.  Roll call was subsequently canceled but the Warden emailed Plaintiff on March 23, 2020, advising Plaintiff that the canceling of roll call did "not grant [Plaintiff's] request" for reasonable accommodation.

45.  On March 30, 2020, the same Lieutenant involved in the unlawful reassignment of Plaintiff

from his reasonable accommodation post advised Plaintiff that the same Captain, who issued the unlawful counseling letter to Plaintiff, issued a new directive that Plaintiff could no longer simply call Perimeter Patrol to relieve him for restroom breaks, as had been the regular practice for the nine (9) years previous of Plaintiff's employment at the facility, but that he had to now contact Watch Command by phone and request to be relieved to use the restroom and that Watch Command would determine if a restroom break was "warranted."  The Watch Commander would then find someone working inside the facility to relieve Plaintiff rather than utilizing one of the two (2) Perimeter Patrol Officers already working in patrol vehicles outside the facility.  Plaintiff's control center position (Checkpoint) was the only control center in the entire prison complex that didn't have restroom facilities and access to water built into it. Plaintiff's control center position was also in a remote building nearly one mile from the main facility housing inmates (South Facility).  The Captain's new restroom restrictions were capriciously implemented to harass, retaliate, and otherwise discriminate against Plaintiff because of his EEO complaint to the Director for opposing the Captain's discriminatory counseling discipline issued on January 22, 2020.  The new restroom restrictions required Plaintiff to wait unreasonable periods for Watch Command to send a staff member to relieve him to use the restroom.

46.  On this same date (March 30, 2020), Plaintiff emailed the Director another EEO complaint against the Lieutenant, the Captain, and the Major, who was allowing the abuse of Plaintiff by subordinate command staff.  Also included in this complaint were the new, capricious restrictions of Plaintiff's restroom breaks, and new, capricious restrictions on Plaintiff's ability to perform his duties prescribed by WDOC policy, procedure and post orders, and safety issues demonstrating that the new restroom restrictions were not based on any public safety or facility safety goals but were rather just more discriminatory and retaliatory treatment for Plaintiff's opposition to discriminatory treatment and that the capricious restrictions violated WSP facility policy, procedure, and post orders involving facility safety.  This complaint was attached to an

email to the Director that included an offer by Plaintiff to enter into a negotiation for a "mutually acceptable severance package" to end Plaintiff's employment with the agency to avoid further egregious abuse and a protracted legal process as the discriminatory abuse had grown so pervasive at Plaintiff's job that his disability conditions were being aggravated to the point of becoming life-threatening.

47.  On March 31, 2020, Plaintiff emailed the Director, again requesting reasonable accommodation for the capricious restroom restrictions being imposed on him as Plaintiff's disability conditions were being aggravated by the capricious new restrictions imposed by the Captain and enforced by Watch Command.

48.  On this same date (March 31, 2020), the Director responded that he did not find the new restroom restrictions "unduly onerous," and, despite the fact that Plaintiff had requested reasonable accommodation, he stated further that Plaintiff was "facing the same requirements as other staff," again denying Plaintiff's request for reasonable accommodation.

49.  On April 9, 2020, Plaintiff submitted another EEO complaint to the Director, entitled "Undue Scrutiny and Surveillance—Hostile Work Environment Involving Command Staff."  The facility had recently implemented a computer shift log for each post, retiring the handwritten shift logs that had previously been used during Plaintiff's entire tenure with Defendant WDOC. Watch Command began monitoring Plaintiff's shift log from another computer inside South Facility.  Plaintiff was aware of this because a tab appeared on the computer screen with one of the Lieutenant's names on it.  In addition to the undue scrutiny and surveillance on his computer by Watch Command, rather than drive up to Plaintiff's post for a post check, as every other Watch Commander who performed a post check did for over nine (9) years of Plaintiff's employment, one of the Lieutenants began walking to Plaintiff's post from South Facility, a distance of nearly two (2) miles roundtrip, under cover of darkness, suddenly appearing at the outer door of Plaintiff's post.  Watch Commanders were conducting irregular and unlawful scrutiny and surveillance of Plaintiff at his workstation to further harass and further retaliate

14

against Plaintiff because of his protected status, because of his protected opposition, and because of his protected participation in EEO proceedings.  No other control center officer could be surveilled in such a manner due to physical barriers inside of South Facility.  This was disparate treatment.

50.  On April 14, 2020, Plaintiff filed yet another EEO complaint with the Director regarding continued discriminatory treatment by the Major, the Captain, and the Watch Commanders for restricting Plaintiff's use of the restroom and for disparate treatment for how other staff on the same post were being relieved for restroom breaks by Perimeter Patrol on Plaintiff's days off. Plaintiff further advised the Director that if the discriminatory abuse weren't remedied that he would seek other (legal) relief for the ongoing discriminatory treatment by the involved command staff.

51.  On April 15, 2020, the Director emailed Plaintiff, again refusing to offer reasonable accommodation regarding the capricious and discriminatory restroom restrictions being imposed on Plaintiff by command staff.

52.  On this same date (April 15, 2020), during Plaintiff's shift that evening, the same Lieutenant involved in the discriminatory treatment arrived at Plaintiff's post with another Lieutenant and issued Plaintiff two cloth facemasks, demanding that he put one on.  Plaintiff advised the Lieutenant that he could not wear the masks due to his medical conditions.  The Lieutenant stated that it was a requirement issued by the Director and that Plaintiff had to wear the mask. Plaintiff advised the Lieutenant again that he could not wear the mask due to his medical conditions and that he needed to be provided an alternative to wearing the provided mask due to his medical conditions.  The Lieutenant then contacted the Major at home by phone from Plaintiff's post, stating that Plaintiff was "refusing" to wear the mask.  Plaintiff objected to the Lieutenant's mischaracterization while he was talking to the Major, stating that he did not "refuse" to wear the mask but rather that he "could not" wear the mask due to his medical conditions.  Plaintiff remained at his post for the remainder of his shift, approximately 6:15 a.m.

15

on April 16, 2020.

53.  Plaintiff then emailed the Director on April 15, 2020, advising him of the incident with the Lieutenant, and requested reasonable accommodation for the mask requirement, even offering to purchase some form of alternative equipment at his own expense to satisfy the agency's needs and accommodate Plaintiff's known disability conditions.

54.  Following the mask incident with the Lieutenant on April 15, 2020, the same Lieutenant called Plaintiff at his post by phone to go over Plaintiff's annual performance appraisal.  The Lieutenant included the discriminatory counseling action issued by the Captain on January 22, 2020, and the remainder of evaluation was negative in content.  Plaintiff had never received a negative performance evaluation from any evaluator during his entire employment with Defendant WDOC, and the Lieutenant's evaluation of the Plaintiff stood in particularly stark contrast to his previous annual performance evaluation.  The Lieutenant's negative performance evaluation of Plaintiff was further harassment, retaliation, and discriminatory treatment as a result of Plaintiff's opposition to the same Lieutenant's unlawful reassignment of Plaintiff from his reasonable accommodation post on December 24, 2019 as well as the subsequent EEO complaints filed against him by Plaintiff.

55.  On April 16, 2020, although Plaintiff had requested reasonable accommodation from the Director by email regarding the mask incident the previous evening, Plaintiff received no contact from any agents of Defendant WDOC throughout the entire business day.  Plaintiff arrived to his worksite and was confronted just inside the main lobby by the same Lieutenant and another Captain.  The Lieutenant again started demanding that Plaintiff put on the provided mask. Plaintiff again advised them that he had already advised the same Lieutenant the previous evening that he could not wear the mask due to his medical conditions and again requested a reasonable accommodation.  The Lieutenant persisted in demanding that Plaintiff had to wear the mask.  Plaintiff again advised the Lieutenant that he could not wear the mask due to his medical conditions and that he needed an alternative to wearing a mask.  At this point, the

16

Captain told Plaintiff to go home.  As Plaintiff was leaving, the Lieutenant handed Plaintiff an envelope that he had been holding in his hand the entire time.  The Lieutenant then stated that Plaintiff would have to use his own accrued time off to cover the lost time from the shift that they would not allow him to work.  Plaintiff opened the letter to discover that it was from the Warden. The letter, entitled "RE: The Americans with Disabilities Act," stated that if Plaintiff were alleging a medical condition that prohibited him from wearing a mask for brief periods of time that Plaintiff must submit documentation that could be reviewed for possible accommodation.  The Warden included a copy of the Correctional Officer job description with this letter.  Nowhere in the "Essential Functions" listed in the job description was wearing a mask mentioned or even implied.  Defendant WDOC and the Warden had already been made aware of Plaintiff's medical conditions that precluded his wearing a mask over and against his nose and mouth.

56.  On Friday, April 17, 2020, Plaintiff sent an email to the Warden, entitled "Reasonable Accommodation Already Requested Multiple Times," and attached more medical information from his primary care provider regarding the medical conditions that prevented Plaintiff from wearing a mask over and against his nose and mouth.

57.  On Monday, April 20, 2020, Plaintiff had no contact from any Defendant WDOC's agents regarding whether he was going to be allowed to work that evening, on which he was scheduled.  Considering that he had been sent home from his shift on April 16, 2020, Plaintiff called the facility and spoke with the Watch Commander.  Plaintiff asked the Watch Commander if he was going to be allowed to work his shift.  The Watch Commander initially said that he was not.  Minutes later, the Watch Commander called Plaintiff back and told him that he was on the schedule and to come in to work his regular post (Checkpoint).  Plaintiff arrived at his worksite and was immediately confronted inside the vestibule of the main entrance by the Warden, the WSP HRM, and the Major.  The Warden handed Plaintiff one of two envelopes that he was holding and instructed the Plaintiff to read the letter.  The first letter was an advisement that Plaintiff was being placed on paid "Administrative Review Leave (ARL)."  The Plaintiff asked the

17

Warden if this was a "disciplinary" action because it seemed disciplinary, to which the Warden replied, "No, that's what *this* is," as the Warden then handed Plaintiff the second letter, which stated that the Plaintiff could no longer be a Correctional Officer because it was an "essential function" of Plaintiff's position that he be able to wear a mask. The letter went on to say that the Plaintiff's inability to wear a mask was a "safety issue" and that Defendant WDOC could not accommodate Plaintiff's reasonable accommodation request. Between Friday, April 17, 2020, and Monday, April 20, 2020, with the weekend in between, Defendant WDOC, the Director, the Warden, the WSP HRM, and the Major were claiming that all possible reasonable accommodations in Plaintiff's current position had been explored and exhausted. Also included with the letter was a list of jobs (eighteen [18]) with the WDOC that also included Plaintiff's current position of Correctional Officer, which the Warden instructed Plaintiff to review for possible reassignment. All of the posted positions on the list would have had the same new mask conditions. The Warden's letter closed with a demand that Plaintiff contact him "in writing" regarding the provided list of positions for which the Plaintiff believed that he would be minimally qualified. The Warden further stated that there was "no time limit" on his demand. He then told the Plaintiff that he was "done with [him]" and that he could leave. In fact, there were several reasonable accommodations available in Plaintiff's current occupation that would have satisfied the Director's mask edict. The WSP Warden's placing Plaintiff on ARL was an adverse employment action.

58. On Thursday, April 23, 2020, the Warden, with the WSP HRM present in the room with him, contacted Plaintiff by phone asking him if he was going to respond "in writing" to the reassignment letter he provided Plaintiff on April 20, 2020. Plaintiff advised the Warden and the WSP HRM that they were required to discuss reasonable accommodation in his current occupation, that the Warden's letter was nonsensical because it listed possible reassignment positions with the same mask conditions as those being imposed in Plaintiff's Correctional Officer position, and that Plaintiff was pursuing a grievance, an EEOC complaint, and a possible

18

lawsuit for damages if agents of Defendant WDOC caused him to lose his job.

59.  On April 27, 2020, the Warden issued Plaintiff another letter, which stated that Plaintiff had been offered the reasonable accommodation of holding the mask over his face with his hand rather than tying it on, a condition that would only exacerbate Plaintiff's medical conditions because, in addition to the mask, the Plaintiff would also be holding his hand over and against his nose and mouth, which was no modification or accommodation for the mask edict issued by the Director.  Because of the mask issue being the same for the proposed reassignment list of positions previously provided Plaintiff by the Warden, the list was reduced from eighteen (18) to three (3) prospective positions for possible reassignment, and all three would still require that Plaintiff wear a mask over and against his nose and mouth.  The Warden then tried to ply Plaintiff under threat of ending his paid ARL.  The Warden stated that he had scheduled a phone conference for April 30 with Plaintiff to continue the interactive process.  The Warden concluded the letter informing Plaintiff that he could use FMLA during his ARL period.  The Warden and WSP HRM were not engaging in the interactive process in good faith but were rather dictating the ADA interactive process under threat of discontinuing Plaintiff's ARL income and benefits.

60.  On April 30, 2020, Plaintiff was contacted by phone by the Warden with the WSP HRM and the WPEA Executive Director (conferenced in at Plaintiff's request).  During this conference, the Warden refused to discuss any options for reasonable accommodation in Plaintiff's own occupation, refused to discuss the absence of a mask requirement in the Plaintiff's Correctional Officer job description, refused to answer how the agency's alleged offer of Plaintiff holding the mask over his face with his hand was a reasonable accommodation for the Director's masking conditions, and insisted on only discussing possible reassignment "locations" but made no actual offer of a position.  He agreed to accept a list of questions prepared by the WPEA Executive Director and Plaintiff to clarify Defendant WDOC's positions regarding the interactive process.

61. On May 6, 2020, Plaintiff received a letter from the Director via email in which he excused the ongoing harassment and retaliatory behavior by command staff against Plaintiff, but he failed to address all of the ongoing harassment and retaliatory behavior by command staff against Plaintiff, particularly the incident of December 24, 2019 by the Watch Commander, the retaliatory drug screen ordered by the WSP HRM on January 2, 2020, and the retaliatory counseling disciplinary action issued by the Captain on January 22, 2020.  He closed the letter by stating that the investigation was complete.

62. On this same date (May 6, 2020), Plaintiff responded to the WDOC HRM advising her that as a result of the Director's failure to investigate all of Plaintiff's EEO complaints, as he had stated that he would in writing on January 31, 2020, Plaintiff was filing an EEOC complaint.  The WDOC HRM did not respond to Plaintiff's email.

63. Also on this same date (May 6, 2020), Plaintiff received an email from the Warden in which he threatened to end Plaintiff's paid ARL leave if he didn't respond in writing with the list of questions demanded during the April 30, 2020 phone conference.

64. On May 11, 2020, Plaintiff responded to the Warden in writing with the demanded list of questions regarding the interactive process.   On May 13, 2020, the Warden responded to the questions, refusing to discuss any other kind of breathing apparatus (respirators) that would reasonably accommodate Plaintiff in his current position, argued that wearing a mask was an essential function while explaining away why it was not included in the Correctional Officer job description, refused to answer a general question about reasonable accommodation being offered to other staff regarding the mask issue (arguing it was confidential), and ended the letter stating that other WDOC positions allowed for accommodation of Plaintiff's medical conditions and reiterated "locations" of other WDOC positions.  In fact, the "essential functions" listed in the job description of the possible reassignment positions did not reasonably accommodate plaintiff's disability conditions.

65. On May 11, 2020, Plaintiff filed an EEOC complaint against Defendant WDOC regarding

the ADA, ADEA, and Title VII violations committed within the three hundred (300) days previous to May 11, 2020.

66. On May 20, 2020, Plaintiff responded to the Warden by email in response to his vague and evasive responses to Plaintiff's list of questions, including his outright refusal to answer certain questions. Plaintiff stated that the Warden was not acting in good faith in the interactive process in working toward a mutually acceptable reasonable accommodation; the Warden had done nothing during the process in good faith but was rather dictating the interactive process by reducing Plaintiff's income and pension, dismissing Plaintiff's every recommendation, making demands, setting time limits, requiring written statements, threatening his salary, and threatening his employment. Plaintiff further asked the Warden to make an actual offer of a reassignment position, rather than discussing possible locations. Plaintiff also asked the Warden to explain specifically how the other WDOC prospective positions could reasonably accommodate the Plaintiff's medical conditions where his position of Correctional Officer could not. Plaintiff closed the letter with an offer of a complete resolution of the EEOC complaint currently pending and to continue in the ADA interactive process.

67. On May 27, 2020, an Intent to Dismiss letter was sent to Plaintiff via email from the WSP HRM. The Intent to Dismiss letter was from the Warden, dated May 22, 2020. The letter stated that Plaintiff was being dismissed from his employment due to his "incapacity to perform assigned duties caused by [Plaintiff's] documented medical conditions." He stated further that "there was no other reasonable accommodation available to replace a mask as personal protective equipment" and that [Plaintiff] "did not provide feedback on what positions [Plaintiff] would consider for reassignment." Contrary to all the Warden's assertions in the letter, Plaintiff was fully engaging in the ADA interactive process with his union representative, the WPEA Executive Director, who agreed that at no time did Defendant WDOC, through its agents the Warden and the WSP HRM, discuss reasonable accommodation in Plaintiff's current occupation, nor was Plaintiff ever actually offered a reassignment position in the WDOC, which,

21

in his May 20, 2020 email to the Warden, Plaintiff agreed to accepting in the case that the Warden was still not willing to discuss reasonable accommodation in Plaintiff's current occupation.  Instead of making Plaintiff an actual offer of reassignment to another position, following Plaintiff's willingness to accept such a position if offered (as Plaintiff requested in his May 20, 2020 email to the Warden), on May 27, 2020, the WSP HRM emailed Plaintiff an Intent to Dismiss Letter from the Warden, dated May 22, 2020, refusing to further engage in the ADA interactive process.

68.  Per State of Wyoming Personnel Policy, Plaintiff had a ten (10) day appeal period following receipt of the Intent to Dismiss letter.  Plaintiff, through his union representative, the WPEA, filed both an appeal letter with the Warden as well as a grievance/complaint letter to the Wyoming A&I - Human Resources Administrator and the Wyoming Governor's Office that detailed multiple ethics, ADA, and State and WDOC policy violations by the Director, Warden, WSP HRM, and the involved Major, Captain, and Watch Commanders (Lieutenants).  In both the appeal letter to WSP Warden Pacheco and the grievance/complaint letter to the A&I Administrator, Plaintiff requested that the WDOC continue to engage in the ADA interactive process.

69.  Because the grievance/complaint was filed against the WDOC Director, the Wyoming A&I Human Resources Administrator was charged with the responsibility under the State of Wyoming Personnel Rules to investigate the matter.  Neither the Governor's Office nor the Wyoming A&I - Human Resources Administrator ever responded to Plaintiff's grievance/ complaint or otherwise intervened in Plaintiff's unlawful termination from employment with the WDOC (State of Wyoming), making the Administrator complicit in the unlawful actions being taken against Plaintiff in violation of the ADA.  Further, the Administrator, despite her being required by State of Wyoming Personnel Policy to preside over Plaintiff's grievance/ complaint against the Director, allowed the Director to preside over a grievance/complaint against himself and make the decision to terminate Plaintiff's employment in direct violation of Wyoming State Personnel Policy.  The appeal process was just another fraud controlled by the

22

WDOC administration, which was unlawfully committed to ending the Plaintiff's employment.

70. On June 15, 2020, while Plaintiff was still employed and on paid ARL pending his Intent to Dismiss appeal, the WPEA Executive Director spoke with the WDOC DHRM, requesting that the WDOC simply make an actual offer of the alternative position, which would be accepted by Plaintiff, but the WDOC DHRM responded that there were no longer any positions available to offer due to budget cuts. Between May 26, 2020, the day before the WSP HRM emailed Plaintiff the Warden's Intent to Dismiss letter (when the Warden was still dangling alternative position "locations" as a possible reasonable accommodation reassignment for Plaintiff), and June 15, 2020, when the WPEA Executive Director asked the WDOC DHRM to make an actual offer of a reassignment position to Plaintiff, all of the positions in the discussed "locations" had suddenly become unavailable: a period of only twenty (20) days. Defendant WDOC and its administrative and managerial agents were never acting in good faith to offer Plaintiff a reassignment position as a reasonable accommodation for his disability conditions. Their actions were all a ruse, executed by the Defendant WDOC's agents to terminate Plaintiff's long-term employment because of his protected status, protected opposition, and protected participation under the ADA.

71. On June 24, 2020, the WDOC DHRM emailed a "Final Dismissal" letter to Plaintiff from the Director, dated June 23, 2020, terminating Plaintiff from his employment, again refusing to continue to engage in the ADA interactive process.

72. Since the administrative, managerial, and supervisory employees were agents of the State of Wyoming, acting under color of authority of the State of Wyoming, and since the State of Wyoming, WDOC, and A&I - Human Resources took no action to intervene and put a stop to their agents' discriminatory actions toward Plaintiff, they are liable for damages incurred by Plaintiff as a result of their agents' multiple violations of the ADA listed herein.

73. Defendants State of Wyoming, Wyoming Department of Corrections, and Wyoming A&I - Human Resources unlawfully discriminated against Plaintiff, by and through their administrative,

managerial, and supervisory agents, with Defendants' knowledge and consent, because of Plaintiff's disabilities, retaliated against Plaintiff for his opposition to Defendants' unlawful discriminatory actions against him, retaliated against Plaintiff for his participation in discrimination proceedings, engaged in adverse employment actions, failed to continue the interactive process, and failed to offer reasonable accommodation, all in violation of the ADA.

74.  As a direct, foreseeable, and legal result of the Defendants' violations of the ADA, Plaintiff has suffered, and continues to suffer, overall economic losses in earnings, job benefits, and expenses.

75.  As a further direct, foreseeable, and legal result of the Defendants' violations of the ADA, Plaintiff has suffered, and continues to suffer, indignity, mental anguish, humiliation, emotional distress, nervousness, tension, inconvenience, and loss of enjoyment of life.  Additionally, the Defendants' brazen and malicious violations of the Plaintiff's ADA rights have substantially aggravated Plaintiff's disability conditions, drastically impairing Plaintiff's ability to function in everyday life.

76.  Plaintiff seeks damages against Defendants, as listed under the "RELIEF" heading, included with these claims, for their violations of Plaintiff's rights under the ADA as listed herein.

## SECOND CAUSE OF ACTION

**For Disability Discrimination, Retaliation for Plaintiff's Opposition to Defendants' Unlawful Discrimination, Retaliation for Plaintiff's Participation in Discrimination Proceedings, Adverse Employment Actions, Failure to Continue the Interactive Process, and Failure to Offer Reasonable Accommodation in Violation of the Rehabilitation Act— Against Defendants State of Wyoming, Wyoming Department of Corrections, and Wyoming Administration & Information - Human Resources.**

77.  Plaintiff incorporates the allegations set forth in paragraphs 1 through 76, inclusive, as if fully set forth herein.

78.  Defendants State of Wyoming, WDOC, Wyoming A&I - Human Resources are covered

entities under the Rehabilitation Act because Defendant State of Wyoming receives financial assistance from the Federal government.

79.  Plaintiff specifically reasserts his allegations made under the "FIRST CAUSE OF ACTION" for Defendants' violations of the ADA from paragraphs 1 through 76 in this complaint as concurrent violations of the Rehabilitation Act.

80.  Defendants State of Wyoming, Wyoming Department of Corrections, and Wyoming A&I - Human Resources unlawfully discriminated against Plaintiff, by and through their administrative, managerial, and supervisory agents, with the Defendants' knowledge and consent, because of Plaintiff's disabilities, retaliated against Plaintiff for his opposition to Defendants' unlawful discriminatory actions against him, retaliated against Plaintiff for his participation in discrimination proceedings, engaged in adverse employment actions, failed to continue the interactive process, and failed to offer reasonable accommodation, all in violation of the Rehabilitation Act.

81.  As a direct, foreseeable, and legal result of the Defendants' violations of the Rehabilitation Act, Plaintiff has suffered, and continues to suffer, overall economic losses in earnings, job benefits, and expenses.

82.  As a further direct, foreseeable, and legal result of the Defendants' violations of the Rehabilitation Act, the Plaintiff has suffered, and continues to suffer, indignity, mental anguish, humiliation, emotional distress, nervousness, tension, inconvenience, and loss of enjoyment of life.  Additionally, the Defendants' brazen and malicious violations of the Plaintiff's rights under the Rehabilitation Act have significantly aggravated Plaintiff's disability conditions, drastically impairing Plaintiff's ability to function in everyday life.

83.  Plaintiff seeks damages against Defendants for their violations of the Rehabilitation Act, as set forth herein above, as listed under the "RELIEF" heading included with these claims.

### THIRD CAUSE OF ACTION

**For Discrimination, Retaliation for Plaintiff's Opposition to Defendants' Unlawful**

**Discrimination, Retaliation for Plaintiff's Participation in Discrimination Proceedings, and Adverse Employment Actions in violation of Title VII of the Civil Rights Act—Against State of Wyoming, WDOC, and Wyoming A&I - Human Resources.**

84.  Plaintiff incorporates the allegations set forth in paragraphs 1 through 83, inclusive, as if fully set forth herein.

85.  Plaintiff included Title VII of the Civil Rights Act violations in his EEOC complaint of May 11, 2020 and received a Right-to-Sue notice on August 9, 2021 (attached as "Exhibit A").

86.  Plaintiff had filed multiple EEO complaints regarding violations of Title VII of the Civil Rights Act.  One of these complaints was substantiated after an internal investigation.  Plaintiff filed numerous EEO complaints for Title VII retaliation, ongoing harassment, and hostile work environment from November 2014 through April 2017, which the Director refused to substantiate, leaving Plaintiff only the option of filing an EEOC complaint in April of 2017.

87.  While the April 2017 EEOC complaint was under investigation, Plaintiff experienced a continual series of discriminatory, harassing, and retaliatory actions by administrative, managerial, and supervisory employees, perpetuating a hostile work environment against Plaintiff.

88.  Plaintiff's protected opposition to defendants' discriminatory actions and his protected participation in internal EEO and EEOC proceedings under Title VII of the Civil Rights Act contributed to Defendants' animosity toward Plaintiff and were contributing factors in Defendants' discriminatory, harassing, and retaliatory behavior Plaintiff experienced as a result of his protected disability status up to and including his termination from employment by Defendants.

89.  Defendants State of Wyoming, Wyoming Department of Corrections, and Wyoming A&I - Human Resources unlawfully discriminated against Plaintiff, by and through their administrative, managerial, and supervisory agents, with the Defendants' knowledge and consent, because of Plaintiff's previous EEO and EEOC complaints, retaliated against Plaintiff for his opposition to Defendants' unlawful discriminatory actions against him, retaliated against Plaintiff for his participation in discrimination proceedings, and engaged in adverse employment actions.

26

90. As a direct, foreseeable, and legal result of the Defendants' violations of Title VII of the Civil Rights Act, Plaintiff has suffered, and continues to suffer, overall economic losses in earnings, job benefits, and expenses.

91. As a further direct, foreseeable, and legal result of the Defendants' violations of Title VII of the Civil Rights Act, the Plaintiff has suffered, and continues to suffer, indignity, mental anguish, humiliation, emotional distress, nervousness, tension, inconvenience, and loss of enjoyment of life. Additionally, the Defendants' brazen and malicious violations of the Plaintiff's rights under Title VII of the Civil Rights Act have significantly aggravated Plaintiff's disability conditions, drastically impairing Plaintiff's ability to function in everyday life.

92. Plaintiff seeks damages against Defendants for their violations of Title VII of the Civil Rights Act, as set forth herein above, as listed under the "RELIEF" heading included with these claims.

## FOURTH CAUSE OF ACTION

**For Age Discrimination in Refusing to Promote Plaintiff Due to His Age Despite His Qualifications in Violation of the Age Discrimination in Employment Act—Against Defendants State of Wyoming and WDOC.**

93. Plaintiff incorporates the allegations set forth in paragraphs 1 through 92, inclusive, as if fully set forth herein.

94. The State of Wyoming and WDOC are covered entities under the ADEA.

95. Plaintiff was 56 years old at the time of his application for promotion, making him an eligible employee under the ADEA.

96. Plaintiff included ADEA violations in his EEOC complaint of May 11, 2020 and received a Right-to-Sue notice on August 9, 2021 (attached as "Exhibit A").

97. Plaintiff holds a bachelor's degree and an associate's degree and had over thirty-five years of experience in security and law enforcement, which included management and supervision. Plaintiff was working with the WDOC for approximately eight (8) years at the time of his application for the promotional position.

98.  On June 6, 2019, Plaintiff applied for an open promotional position at his worksite, the

Wyoming State Penitentiary (WSP).  Plaintiff's qualifications for the position far exceeded

the minimum qualifications for the prospective position, and, because it was an administrative

position, the prescribed duties would likely have reasonably accommodated Plaintiff's disability

conditions as Plaintiff had already been performing investigative duties at this level for

approximately two (2) years at the request of a WSP Captain while Plaintiff was working in his

reasonable accommodation post (Checkpoint).

99.  On July 3, 2019, Plaintiff received notification from WSP Human Resources staff that his

application had been approved to proceed in the application process for the promotional

position.  Plaintiff prepared and timely submitted the prescribed promotional packet and

was scheduled for an interview on July 11, 2019.

100.  Plaintiff attended the July 11, 2019 interview with the WSP DW, the WSP HRM, the WSP

Major, and a Major from another WDOC facility.  During the interview, Plaintiff was badgered by

the WSP DW with questions about his "ability" to work in an "all-male" facility.  Since Plaintiff

had been at WSP, an all-male facility, for several years, it was apparent that the DW was

specifically addressing Plaintiff's disability conditions as a condition of employment for the

position.  Plaintiff suffers from several disability conditions that become more debilitating with

age, of which the DW and the WSP HRM had intimate knowledge because they were both

directly involved in Plaintiff's previous reasonable accommodation request.

101.  On July 16, 2019, WDOC Human Resources staff advised Plaintiff by email that he was

not selected for the promotional position.  The position was not filled and was reposted.

102.  On July 19, 2019, Plaintiff emailed the Director (then WDOC Director) requesting a review

of the agency's decision not to offer him the promotional position.

103.  On July 23, 2019, the Director responded, affirming the agency's decision to deny Plaintiff

the promotion.

104.  On August 23, 2019, Plaintiff reapplied to the reposted promotional position.  Although

Plaintiff received an acknowledgement of receipt of his application, he was never contacted by

WSP Human Resources and allowed to compete in the selection process against the new

pool of applicants.  Around the beginning of January 2020, over six (6) months after Plaintiff's

initial application for the position, the agency offered the promotional position to a much

younger, less experienced, less qualified candidate from another facility.  In 2010, Plaintiff had

applied for a promotional position only one step in rank below the promotional position in this

case, for which he met the minimum qualifications and completed the interview process before

he had even completed his first year with the agency.  Since 2010, when Plaintiff was 47, all of

Plaintiff's attempts to promote up until 2020 were either denied, impeded, or ignored regardless

of his qualifications.

105.  As a direct, foreseeable, and legal result of Defendants State of Wyoming's and WDOC's

age discrimination in refusing to promote Plaintiff to the open promotional position, for which he

was more than qualified, and instead offering the position to a much younger, less experienced,

and less qualified candidate, Plaintiff has suffered, and continues to suffer, overall losses in

earnings, professional development, and future financial advancement.  By their unlawful

actions, Defendants were yet again deliberately impeding Plaintiff's ability to improve his

position in the agency because of his age, discounting his qualifications in favor of a much

younger, less experienced, and less qualified candidate.

106.  As a further direct, foreseeable, and legal result of the Defendants' violations of the ADEA,

the Plaintiff has suffered indignity, mental anguish, humiliation, emotional distress, nervousness,

tension, inconvenience, and loss of enjoyment of life.

107.  Plaintiff seeks damages against Defendants, as listed under the "RELIEF" heading,

included with these claims, for their violations of Plaintiff's rights under the ADEA as listed

herein.

## FIFTH CAUSE OF ACTION

**For Violating Plaintiff's Rights under the Family Medical Leave Act (FMLA), Deliberately Harassing Plaintiff on FMLA Protected Leave, Harassing Plaintiff by Contacting his Primary Care Provider to Contest his FMLA Eligibility Submission, Attempting to Schedule a Meeting (Work) with Plaintiff while on FMLA Protected Leave, and Refusing to Allow Plaintiff to Use FMLA Protected Leave When Defendants Restricted Plaintiff from Working Due to His Disability Conditions—Against Defendants State of Wyoming, WDOC, and Wyoming A&I - Human Resources.**

108.  Plaintiff incorporates the allegations set forth in paragraphs 1 through 107, inclusive, as if fully set forth herein.

109.  On January 28, 2020, Plaintiff submitted his updated application for intermittent FMLA with WSP Human Resources.   On this same date, a Human Resources staff member acknowledged receipt of the updated FMLA submission.  On January 29, 2020, Plaintiff received a phone call from his primary care provider's office, advising him that the WSP HRM had contacted them by phone and email, challenging Plaintiff's FMLA submission even though there were no changes from the previous year's submission, to which the WSP HRM had made no previous challenge. Plaintiff then resubmitted the same paperwork, and the Human Resources staff member accepted the submission and issued Plaintiff a new Notice of Eligibility for intermittent FMLA.

110.  On January 29, 2020, Plaintiff filed another EEO complaint against the WSP HRM with the WDOC HRM, alleging that the WSP HRM's contacting Plaintiff's primary care provider and contesting Plaintiff's FMLA submission was continuing discriminatory harassment and retaliation on his part for Plaintiff's opposing recent discriminatory treatment by both him and the Lieutenant who had reassigned Plaintiff from his reasonable accommodation post.

111.  On January 31, 2020, the WDOC DHRM was assigned by the Director to investigate an internal EEO complaint sent to the Director by Plaintiff on January 23, 2020.  In this complaint, Plaintiff informed the Director that he was unable at the time to return to work because of his

disability conditions.  Since the WDOC DHRM was assigned this complaint, he would have

been aware that Plaintiff was off work on intermittent FMLA protected leave.

112.  Despite being informed by Plaintiff, in writing, several times that Plaintiff was on FMLA

leave (protected leave) from January 22, 2020 through on or about February 25, 2020, the

WDOC DHRM, over Plaintiff's written requests to stop, brazenly attempted on several occasions

between February 3, 2020 and February 13, 2020 to schedule a meeting with Plaintiff, even

going so far as contacting a representative of the Wyoming Public Employees Association

(WPEA) to schedule a meeting with Plaintiff.  The WPEA is not an exclusive bargaining

representative of State Employees and Plaintiff had not yet involved the WPEA in this matter.

113.  On February 12, 2020, Plaintiff notified the Director in writing about the WDOC DHRM's

unlawful attempts to schedule Plaintiff for a meeting while he was on protected leave, but

the Director simply justified the WDOC DHRM's deliberate harassment of Plaintiff while he was

on protected leave because of his disability conditions.  Despite the email from Plaintiff to the

Director on February 12, 2020, advising him of the WDOC DHRM's violations of the FMLA,

the WDOC DHRM sent yet another email February 13, 2020, requesting to schedule a meeting

with Plaintiff while he was still on protected leave.

114.  Also on February 13, 2020, Plaintiff emailed the WDOC DHRM that despite being advised

several times by Plaintiff that he was on FMLA protected leave, the WDOC DHRM continued to

deliberately harass him by attempting to schedule a meeting.

115.  On April 27, 2020, the WSP HRM emailed Plaintiff a letter from the Warden, dated April

27, 2020, regarding the ADA interactive process.  Plaintiff had already been on paid ARL leave

for seven (7) days.  In his closing remarks in the letter, the Warden advised Plaintiff that if he

needed FMLA leave for his medical conditions while on ARL leave to notify WSP Human

Resources.

116.  On May 27, 2020, the Warden issued Plaintiff and Intent to Dismiss letter, which also

advised Plaintiff of his right to appeal the Intent to Dismiss within ten (10) business days from

receipt of the letter.

117.  On June 10, 2020, the WPEA filed a grievance/complaint with the Wyoming A&I - Human Resources Administrator.  Included in the requested remedy of this grievance/complaint was a request that Plaintiff be allowed to use his remaining FMLA hours credited for year 2020, since Plaintiff was not being allowed to work on the worksite because of his medical conditions despite the fact that he was still a full-time employee.  At the time of this request, Plaintiff still had thirty-six (36) hours of vacation leave, twenty-six (26) hours of sick leave, and three hundred seven (307) hours of FMLA hours credited for year 2020.  Plaintiff's FMLA request was ignored, the Defendants refused to continue the ADA interactive process, and Plaintiff's employment was terminated on June 23, 2020, ending his ARL salary and payments toward his benefits on June 30, 2020.

118.  As a direct, foreseeable, and legal result of Defendants' violations of the Family Medical Leave Act, Plaintiff has suffered, and continues to suffer, overall economic losses in earnings, job benefits, and other expenses.

119.  As a further direct, foreseeable, and legal result of Defendants' violations of the Family Medical Leave Act, Plaintiff has suffered, and continues to suffer, indignity, mental anguish, humiliation, emotional, distress, nervousness, tension, inconvenience, and loss of enjoyment of life.  Additionally, the Defendants' brazen and malicious violations of the Plaintiff's rights under the Family Medical Leave Act have significantly aggravated Plaintiff's disability conditions, drastically impairing Plaintiff's ability to function in everyday life.

120.  Plaintiff seeks damages against Defendants for their violations of the Family Medical Leave Act, as set forth herein above, requested under the "RELIEF" heading included in this complaint.

## SIXTH CAUSE OF ACTION

**For Whistleblower Retaliation Against Plaintiff for Reporting Alleged Violations under the Wyoming Occupational Health and Safety Act, Wyoming OSHA's Refusal in Violation of the Act to Investigate Plaintiff's Whistleblower Complaints After Determining that Plaintiff's Complaints Met the Prima Facie Threshold to Investigate Adverse Employment Actions Resulting from Plaintiff's Wyoming OSHA Whistleblower Safety Complaints— Against Defendants State of Wyoming, WDOC, and Wyoming Workforce Services.**

121.  Plaintiff incorporates the allegations set forth in paragraphs 1 through 120, inclusive, as if fully set forth herein.

122.  On March 13, 2020, the WSP Major issued a directive that authorized the use of bleach in the facility to sanitize all areas throughout the facility as a result of the Covid-19 pandemic. Included in the directive was an instruction that the bleach would be stored and mixed in Plaintiff's reasonable accommodation post (Checkpoint). The instructions further stated that the bleach would be sprayed on surfaces and allowed to dry on the surfaces without being wiped off.

123.  On March 14, 2020, Plaintiff emailed the WSP Safety Officer about his severe respiratory and skin reactions caused by exposure to bleach and requested that it not be stored or mixed in the Plaintiff's workstation. Plaintiff also advised the Safety Officer in his email that he had to medicate himself for respiratory distress as a result of being exposed to the bleach fumes in the Roll Call Room. Plaintiff stated further that the manner in which the bleach was being used was "extreme and unnecessarily dangerous" to staff and inmates. The Employer continued to use bleach in the Roll Call Room, which continued to cause Plaintiff medical distress while attending roll call.

124.  Also on March 14, 2020, Plaintiff emailed the WSP Safety Officer about upcoming annual defensive tactics training. Plaintiff was concerned about contracting the Coronavirus and expressed his concern over attending a required training that required multiple people in one

33

room practicing defensive maneuvers in close physical contact with each other.

125.  On March 20, 2020, Plaintiff emailed the Warden requesting reasonable accommodation to be excused from attending roll call and to be allowed to report directly to his reasonable accommodation post in Checkpoint.  Although roll call was "temporarily" cancelled on March 21, 2020, after Plaintiff's request for reasonable accommodation, the Warden emailed Plaintiff on March 23, 2020 to make a point of telling him that the cancelling of roll call did not grant his reasonable accommodation request.

126.  Although Plaintiff was no longer required to enter the main prison facility to go to roll call, the use of bleach on surfaces continued in the Administration Building where Plaintiff's reasonable accommodation post was housed.  Plaintiff was still being exposed to the bleach fumes and skin irritation due to the use of bleach left on surfaces where Plaintiff worked during the course of his assigned duties.

127.  On March 20, 2020, Plaintiff emailed the Major regarding the use of bleach in his work area aggravating his medical issues.  The use of bleach in the Administration Building continued.

128.  On March 30, 2020, a Lieutenant advised Plaintiff that the Captain issued a new directive that Plaintiff could no longer simply call Perimeter Patrol to relieve him for restroom breaks, as had been the regular practice for the nine (9) years previous of Plaintiff's employment at the facility, but that he had to now contact Watch Command by phone and request to be relieved to use the restroom and that Watch Command would determine if a restroom break was "warranted."  The Watch Commander would then find someone working inside the facility to relieve Plaintiff rather than utilizing one of the two (2) Perimeter Patrol Officers already working in separate patrol vehicles outside the facility.  Plaintiff's control center position (Checkpoint) was the only control center in the entire prison complex that didn't have restroom facilities and access to water built into it.  Plaintiff's control center position was also in a remote building nearly one mile from the main facility housing inmates (South Facility).  The Captain's new

restroom restriction directive was capriciously implemented to harass, retaliate, and otherwise discriminate against Plaintiff because of his EEO complaint to the Director opposing the same Captain's and the same Lieutenant's recent discriminatory and retaliatory actions.  The new restroom restrictions required Plaintiff to wait unreasonable periods for Watch Command to send a staff member to relieve him to use the restroom, deliberately aggravating Plaintiff's disability conditions and placing his health at risk.  This was disparate treatment as no other staff member on any other post would be required to wait extended periods to be relieved to use the restroom.

129.  On this same date (March 30, 2020), Plaintiff emailed the Director another EEO complaint, which included the capricious new restroom restrictions implemented by the involved Captain and enforced by the involved Lieutenant.

130.  On March 31, 2020, Plaintiff emailed the Director again, requesting reasonable accommodation for the capricious restroom restrictions being imposed on him as Plaintiff's disability conditions were being aggravated by the capricious new restrictions imposed upon him by the Captain and enforced by the Lieutenant.

131.  On April 14, 2020, Plaintiff filed yet another complaint with the Director regarding continued discriminatory treatment by the Major, the Captain, and the Lieutenant for restricting Plaintiff's use of the restroom and for disparate treatment for how other staff on the same post were being relieved for restroom breaks by Perimeter Patrol on Plaintiff's days off.  Plaintiff further advised the Director that if the discriminatory abuse weren't remedied that he would seek other (legal) relief for the ongoing discriminatory treatment by the involved command staff.

132.  On April 15, 2020, the same Lieutenant arrived at Plaintiff's post with another Lieutenant and issued Plaintiff two cloth facemasks, demanding that he put one on.  Plaintiff advised the Lieutenant that he could not wear the masks due to his medical conditions.  The Lieutenant stated that it was a requirement issued by the Director and that Plaintiff had to wear the mask.  Plaintiff advised the Lieutenant again that he could not wear the mask due to his medical

conditions and that he needed to be provided an alternative to wearing the provided mask due to his medical conditions. The Lieutenant then contacted the Major at home by phone from Plaintiff's post, stating that Plaintiff was "refusing" to wear the mask. Plaintiff objected to the Lieutenant's mischaracterization while he was talking to the Major, stating that he didn't "refuse" to wear the mask but rather that he "could not" wear the mask due to his medical conditions. Plaintiff remained at his post for the remainder of his shift.

133. On April 16, 2020, Plaintiff was confronted entering his worksite by the same involved Lieutenant and a different Captain demanding that he put on the issued mask. When Plaintiff again responded that he could not wear the mask due to his disability conditions and that he needed an alternative to wearing the mask, he was not allowed to work and was sent home by the Captain. The Lieutenant advised Plaintiff as he was leaving that he would be required to use his own accrued time off to cover his lost time from not being allowed to work.

134. On April 18, 2020, Plaintiff filed a Federal OSHA complaint regarding the improper use and improper storage of bleach throughout the facility. Plaintiff alleged further that employee workspaces were being exposed to bleach while inmate housing areas were exempted. Plaintiff believed that any new safety equipment had to be approved by OSHA like any other safety equipment had to receive regulatory approval before being used by employees. Plaintiff included the requirement of wearing masks manufactured by inmates from material used to make inmate sheets and his being sent home because he couldn't wear the mask due to his health conditions in his OSHA complaint. Plaintiff's Federal OSHA complaint was referred to Wyoming OSHA (administered by Defendant Wyoming Workforce Services) to process Plaintiff's complaint under the State OSHA Plan. Plaintiff's OSHA complaint triggered both an OSHA compliance audit and an OSHA Whistleblower Retaliation response from Defendant Wyoming Workforce Services.

135. On April 20, 2020, the Warden advised Plaintiff that he was being placed on ARL and that he was no longer able to work as a Correctional Officer because of his disability conditions. The

Warden then sent him home, not allowing him to work his scheduled shift.

136.  On April 23, 2020, Plaintiff was contacted by a Wyoming OSHA Compliance Officer, who conducted an interview over the phone.

137.  On April 24, 2020, Plaintiff was contacted by a Wyoming OSHA Whistleblower Investigator for an intake interview.  During this interview, Plaintiff advised the OSHA Investigator of the circumstances surrounding his OSHA complaint, including the capricious restroom restrictions that fall under OSHA requirements.  At the end of this interview, the OSHA Investigator told Plaintiff that his retaliation complaint met all of the elements of "prima facie" to charge the employer for retaliating against Plaintiff because of his multiple workplace safety complaints, that Defendant WDOC had committed adverse employment actions, that she was going to make contact with Defendant WDOC to offer them the opportunity to allow Plaintiff to return to work and be made whole from salary lost from not being allowed to work, and that if Defendant WDOC refused to comply, she was going to issue a charge against Defendant WDOC as early as Monday, April 27, 2020.

138.  On or about May 4, 2020, the OSHA Investigator contacted Plaintiff by phone and informed him that after meeting with her Wyoming OSHA Program manager, they decided not to issue an OSHA retaliation charge against Defendant WDOC, stating that Plaintiff's complaint suddenly didn't meet "prima facie" and that no adverse employment action had occurred.  The Investigator sent Plaintiff a letter with the same information, dated May 4, 2020.

139.  On May 18, 2020, Plaintiff availed himself of his appeal rights to this decision to the Wyoming OSHA Program Manager.

140.  On May 26, 2020, the Program Manager affirmed the previous decision not to investigate the Plaintiff's OSHA complaint, stating that "prima facie" was not met and that there was "no adverse employment action."

141.  On June 8, 2020, Plaintiff filed a "Complaint About State Program Administration" (CASPA) with Federal OSHA in Denver, CO, which oversees the State Program.

142. Plaintiff received a letter from Federal OSHA regarding his CASPA appeal, dated June 24, 2020. In the letter, the Acting Regional Administrator, although deferring to Wyoming OSHA's decision, stated that Plaintiff had been subjected to an adverse employment action by Defendant WDOC, and further recommended that "Wyoming OSHA review its policy and procedures to ensure a comprehensive understanding of prima facie analysis," clearly finding some fault in how Plaintiff's Whistleblower Retaliation case was handled by Wyoming OSHA.

143. Plaintiff's OSHA safety complaints against Defendant WDOC's actions were a contributing factor to the retaliatory treatment he received from administrative, managerial, and supervisory agents of Defendant WDOC. Wyoming Workforce Services (Wyoming OSHA) refusing to investigate Plaintiff's complaint, after the Whistleblower Investigator had made the determination that his complaint met all of the elements of "prima facie" and that Plaintiff was subjected to adverse employment actions, only emboldened Defendant WDOC to continue to violate Plaintiff's rights and expedite Defendant WDOC's agenda to unlawfully terminate Plaintiff's employment. Had Wyoming Workforce Services begun an investigation into Plaintiff's complaint, as required, particularly if it had substantiated Whistleblower Retaliation against Plaintiff by Defendant WDOC, Defendant WDOC would likely have reasonably accommodated Plaintiff in his current occupation or, in the absence of such accommodation, made an actual offer of reassignment as reasonable accommodation and would not have engaged in a facade of participating in the ADA interactive process, then, refuse to continue in the process, terminating Plaintiff's employment.

144. Defendants State of Wyoming, WDOC, and Wyoming Workforce Services have violated Plaintiff's rights under the Wyoming Occupational Health and Safety Act by retaliating and allowing retaliation to continue because of his numerous safety complaints against Defendant WDOC and its administrative, managerial, and supervisory agents, which is protected activity under the Act.

145. As a direct, foreseeable, and legal result of Defendants' violations of the Wyoming

Occupational Health and Safety Act, Plaintiff has suffered, and continues to suffer, overall economic losses in earnings, job benefits, and other expenses.

146.  As a further direct, foreseeable, and legal result of the Defendants' violations of the Wyoming Occupational Health and Safety Act, the Plaintiff has suffered, and continues to suffer, indignity, mental anguish, humiliation, emotional distress, nervousness, tension, inconvenience, and loss of enjoyment of life.  Additionally, the Defendants' brazen and malicious violations of the Plaintiff's rights under the Wyoming Occupational Health and Safety Act have significantly aggravated Plaintiff's disability conditions, drastically impairing Plaintiff's ability to function in everyday life.

147.  Plaintiff seeks damages against Defendants, as listed under the "RELIEF" heading included with these claims for their violations of Plaintiff's rights under the Wyoming Occupational Health and Safety Act as set forth herein.

## SEVENTH CAUSE OF ACTION

**For Intentional Infliction of Emotional Distress—Against Defendants State of Wyoming, WDOC, and Wyoming A&I Human Resources.**

148.  Plaintiff incorporates the allegations set forth in paragraphs 1 through 147, inclusive, as if fully set forth herein.

149.  Plaintiff suffers from physical and psychological conditions known to the WDOC through its many requests for medical information, including actual medical reports.

150.  On October 16, 2019, Plaintiff observed an intruder on the premises from his post.  This was a security threat to the facility.  While Plaintiff followed policy and procedure by the book to direct Perimeter Patrol Units to the scene to intercept, identify, and remove the intruder from the property, staff inside the facility were deliberately interfering with Plaintiff's communications during the incident, obstructing Plaintiff's ability to perform his prescribed duties in an already stressful situation.  Although the abusive behavior was prohibited by policy, Watch Command failed to intervene at any time during the incident to stop the abusive and obstructive behavior

directed at Plaintiff. Following this incident, Plaintiff suffered a significant physical and psychological health event, which required that Plaintiff use his accrued sick time to recover following the abusive incident.

151. When Plaintiff returned to work, he completed a Staff Report regarding the incident. In the Staff Report, Plaintiff stated that the reckless and abusive behavior that was allowed by Watch Command was adversely affecting his ability to perform his prescribed duties as well as adversely affecting his personal health and well-being. Rather than investigate the staff misconduct and abuse of the Plaintiff while performing his prescribed duties, the Major began restricting Plaintiff's duties in his post so that he could no longer perform his duties as prescribed by policy, procedure, and post orders. The Major was directing his subordinate command staff at the facility to render Plaintiff's role at the facility irrelevant in further abuse of the Plaintiff's rights under the ADA, the Rehabilitation Act, and the Civil Rights Act.

152. As previously stated in these causes of action, from the fall of 2019 until June 23, 2020, when Plaintiff was unlawfully terminated from employment with the WDOC and the State of Wyoming, Plaintiff endured a concerted, continual onslaught of personal abuse from the same group of command and administrative staff of the WDOC at WSP, all because of his protected status, protected opposition, and protected participation in discrimination proceedings while working for the State of Wyoming and WDOC.

153. Defendant WDOC's Director purposefully dismissed all of Plaintiff's EEO complaints out of hand and participated in perpetuating the unlawful abuse of the Plaintiff.

154. Defendants State of Wyoming, WDOC, Wyoming Workforce Services, and Wyoming A&I - Human Resources were all aware of the actions of their respective agents' abuse of their respective authority in personally attacking the Plaintiff with the intent of causing Plaintiff severe emotional distress.

155. During this period, as a direct result of the intentional infliction of emotional distress by the Defendants, by and through their administrative, managerial, and supervisory agents, Plaintiff

40

suffered two serious physical and psychological distress events, the second forced the Plaintiff out on sick leave and disability for thirty-five (35) days. The unlawful abuse of the Plaintiff resumed and intensified immediately upon Plaintiff's return to work from this period of prolonged illness.

156. It is clear from the pattern of abuse that the Defendants, by and through their respective administrative, managerial, and supervisory agents, were intent on forcing Plaintiff to resign from his position or force a termination through their unrelenting abuse.

157. As evidenced by the WSP Warden and HRM's complete lack of effort to explore and exhaust reasonable accommodation options in his current occupation before removing him from his position and placing him on ARL, a period of not even one (1) business day, it is evident that the Covid-19 pandemic created a pretext for the Defendants to take advantage of Plaintiff's protected disability status and unlawfully terminate him from his employment following months of outrageously abusive violations of Plaintiff and his Civil Rights.

158. Defendants' knowledge of intimate details of Plaintiff's physical and psychological conditions while perpetrating and perpetuating the abuse demonstrates the clear intent on the part of the Defendants to intentionally inflict emotional distress on Plaintiff for the purpose of forcing him out of his job. The direct actions of the WDOC's administrative, managerial, and supervisory agents to abuse Plaintiff, in violation of his protected status, protected opposition, and protected participation under the ADA and the Rehabilitation Act were so outrageous, extreme, malicious, and sadistic to the point where Plaintiff became so impaired by his psychological and physical symptoms that he could not perform his duties and had to call off work for extended periods, using his intermittent FMLA leave to recover from psychological and physical symptoms inflicted by Defendants' purposeful actions.

159. As a direct, foreseeable, and legal result of Defendants' Intentional Infliction of Emotional Distress, Plaintiff has suffered, and continues to suffer, overall economic losses in earnings, job benefits, and other expenses.

41

160.  As a further direct, foreseeable, and legal result of the Defendants' Intentional Infliction of Emotional Distress, the Plaintiff has suffered, and continues to suffer, indignity, mental anguish, humiliation, emotional distress, nervousness, tension, inconvenience, and loss of enjoyment of life.  Additionally, the Defendants' brazen, outrageous, extreme, malicious, sadistic, and Intentional Infliction of Emotional Distress of the Plaintiff has significantly aggravated Plaintiff's disability conditions, drastically impairing Plaintiff's ability to function in everyday life.

161.  Plaintiff seeks damages against Defendants as listed under the "RELIEF" heading included with these claims for Defendants' Intentional Infliction of Emotional Distress as set forth herein.

## EIGHTH CAUSE OF ACTION

**For Breach of Contract – Employment—Against Defendants State of Wyoming, WDOC, Wyoming Workforce Services, and Wyoming A&I - Human Resources.**

162.  Plaintiff incorporates the allegations set forth in paragraphs 1 through 161, inclusive, as if fully set forth herein.

163.  Plaintiff was a "permanent" employee of the State of Wyoming and the WDOC, not an at-will employee.  According to the State of Wyoming Personnel Rules, Plaintiff could only be terminated for "cause."

164.  Plaintiff had over nine (9) years of employment with the State of Wyoming and the WDOC, no formal disciplinary actions during his employment, and had never received a negative performance evaluation before April 15, 2020 and the events leading up to his unlawful discharge from employment with the WDOC.

165.  The State of Wyoming Personnel Rules provides the terms of the employment contract for all State of Wyoming employees who work for the WDOC as well as most Executive Branch positions in State of Wyoming government.

166.  Defendants breached the employment contract by allowing discrimination against Plaintiff for his protected status, by retaliating against Plaintiff for his opposition to discriminatory

42

practices, by retaliating against Plaintiff for his participation in discrimination proceedings, by refusing to investigate Plaintiff's discrimination and safety complaints, by having no "cause" to discharge Plaintiff from his permanent employment, and by failing to perform other contractual obligations, all in violation of the State of Wyoming Personnel Rules, as previously described by Plaintiff, drastically impairing Plaintiff's physical and mental health.

167.  As a direct, foreseeable, and legal result of Defendants' substantial breaches of the employment contract, Plaintiff has suffered, and continues to suffer, overall economic losses in earnings, job benefits, and expenses.

168.  As a further direct, foreseeable, and legal result of the Defendants' substantial breaches of the employment contract, the Plaintiff has suffered, and continues to suffer, indignity, mental anguish, humiliation, emotional distress, nervousness, tension, inconvenience, and loss of enjoyment of life.  Additionally, the Defendants' brazen and malicious violations of the Plaintiff's contractual rights under the State of Wyoming Personnel Rules have significantly aggravated Plaintiff's disability conditions, drastically impairing Plaintiff's ability to function in everyday life.

169.  Plaintiff seeks damages against Defendants as listed under the "RELIEF" heading included with these claims for their multiple, substantial breaches of the employment contract with Plaintiff, as set forth herein, leading up to and including Plaintiff's termination from employment without "cause."

## NINTH CAUSE OF ACTION

**For Promissory Estoppel – Employment—Against Defendants State of Wyoming and WDOC.**

170.  Plaintiff incorporates the allegations set forth in paragraphs 1 through 169, inclusive, as if fully set forth herein.

171.  Plaintiff had filed a previous EEOC complaint in April of 2017 regarding Defendants' violations of the Civil Rights Act.  The EEOC advised that the matter was being assigned for investigation.

172.  On February 1, 2018, Plaintiff requested an "off-the-record meeting" with the WDOC Director to "resolve all current employment issues, including [Plaintiff's] pending EEOC complaint, to the WDOC's and his mutual benefit in lieu of further contention."

173.  On February 15, 2018, the Director agreed to schedule a meeting and referred Plaintiff to the WDOC HRM to schedule the meeting.

174.  On February 21, 2018, Plaintiff contacted the WDOC HRM via email and submitted his proposed terms for the meeting: one of the terms being that any agreement reached by the parties be reduced to writing for both parties' mutual protection from future actions resulting from issues arising that were not clearly communicated or understood by both parties at the time of the agreement.

175.  On September 11, 2018, the meeting format between Plaintiff and the Director was finally agreed to and the meeting was scheduled for October 16, 2018.

176.  On September 18, 2018, (only seven [7] days after the meeting with the Director was scheduled) the EEOC in Denver mailed a Right-to-Sue notice dated September 19, 2018 to Plaintiff via regular mail.  The Plaintiff received this notice in the mail on September 20, 2018, giving Plaintiff ninety (90) days to file a lawsuit in his EEOC action.

177.  The settlement meeting between Plaintiff and the Director took place as scheduled, and the Director brought an Assistant Attorney General (AAG) from the Wyoming Attorney General's Office with him to the meeting.  The Plaintiff discussed all of his concerns regarding the discriminatory harassment and hostile work environment that he was experiencing as a result of his protected status, protected opposition, and protected participation in EEO and EEOC proceedings with the Director and the AAG.  The Director referred Plaintiff first to meet with the WDOC HRM to resolve his reasonable accommodation request of February 2018 before proceeding with further resolution of Plaintiff's other workplace issues, which included matters of unlawful discrimination, harassment, and hostile work environment being perpetrated and perpetuated by WSP administrative, managerial, and supervisory staff: the catalyst for Plaintiff's

EEOC complaint of April of 2017.

178.  On October 29, 2018, Plaintiff had a phone conference with the WDOC HRM, who had the WSP DW and HRM in attendance with her on the call.  Near the end of the discussion, the WDOC HRM stated that she had to review the discussion with the Director but that it wouldn't be immediately because he was off on personal business.  Plaintiff advised the WDOC HRM that stall tactics on the part of the Director would not prevent Plaintiff's filing of a timely lawsuit regarding his recent EEOC action and pending filing deadline.

179.  On December 17, 2018, Plaintiff had another follow-up phone conference with the WDOC HRM with the WSP HRM in attendance on the call.  During this phone conference, the WDOC HRM offered Plaintiff a mutually agreed to "settlement agreement" to address all of Plaintiff's workplace concerns addressed in his EEOC complaint.  She stated that the settlement agreement would be drafted by an Assistant Attorney General and that both the WDOC and the Plaintiff would have to agree with the terms before Plaintiff would be asked to sign the agreement.  She then asked if this sounded acceptable to the Plaintiff, and he stated that it did.  Plaintiff advised the WDOC HRM that because the WDOC was agreeing to enter into a written agreement to resolve all of his EEOC complaint issues and other workplace concerns that he would not proceed with filing a lawsuit.

180.  Plaintiff relied on the WDOC HRM's promise, the Director's designee in this regard, to negotiate a "settlement agreement," drafted by the AG's office, in lieu of Plaintiff pursuing a lawsuit to resolve his complaints of discrimination, harassment, and hostile work environment included in his EEOC complaint.

181.  On December 31, 2018, the Director issued a letter, entitled "ADA Accommodation & EEOC Settlement Discussions."  Although the Director granted the Plaintiff's reasonable accommodation request because of his disability conditions, he deliberately mischaracterized the written "settlement agreement" promised by the WDOC HRM in his stead.  He also stated that the EEOC closed Plaintiff's case and gave him notification of a right to pursue legal action.

45

He then stated, "As such, this matter is closed." The Director knew that the Plaintiff's deadline to file a lawsuit had lapsed and had now reneged on negotiating a settlement agreement, as promised.

182.  Plaintiff attempted to schedule another meeting with the Director and the WDOC HRM to continue to negotiate the "settlement agreement," but the Director responded in another letter of the same title, dated February 1, 2019, refusing to meet with the Plaintiff, stating, "this [EEOC] matter is concluded and there is no further need to meet regarding this matter." The WDOC's promise to the Plaintiff of a settlement agreement to resolve his EEO concerns was just another ruse to entice the Plaintiff into not pursuing a lawsuit. Once the Director knew that the Plaintiff's filing date had lapsed, he immediately reneged on negotiating a settlement agreement.

183.  Had Defendants State of Wyoming and WDOC kept their promise of a "settlement agreement," Plaintiff would have had additional personal contractual protections that would have prevented the concerted efforts by WSP administrative, managerial, and supervisory staff to attack Plaintiff's employment as Defendants would have had the additional personal contractual obligation to stop the abuse of the Plaintiff that occurred because of his protected status, protected opposition, and protected participation under the ADA, the Rehabilitation Act, and the Civil Rights Act; furthermore, Defendants would have had to resolve the additional personal contractual protections afforded the Plaintiff through the proposed "settlement agreement" if they intended to terminate his employment under the guise that they did. Because the Defendants made a promise of a "settlement agreement" to convince Plaintiff to drop his right to sue in exchange for such an agreement only to renege after the Plaintiff's filing deadline had lapsed, it has engaged in an act of Promissory Estoppel, by definition, by its failure to honor the promise, causing Plaintiff damages.

184.  Since the Defendants can no longer honor the promise due to the legal time limits having long since lapsed, Plaintiff seeks monetary relief to compensate him for the losses incurred as a result of the Defendants' deliberate, brazen, bait-and-switch negotiation tactics.

46

185.  As a direct, foreseeable, and legal result of Defendants' act of Promissory Estoppel,
Plaintiff has suffered, and continues to suffer, overall economic losses in earnings, job benefits,
and other expenses.

186.  As a further direct, foreseeable, and legal result of the Defendants' act of Promissory
Estoppel, Plaintiff has suffered, and continues to suffer, indignity, mental anguish, humiliation,
emotional distress, nervousness, tension, inconvenience, and loss of enjoyment of life.
Additionally, Defendants' have significantly aggravated Plaintiff's disability conditions, drastically
impairing Plaintiff's ability to function in everyday life.

187.  Plaintiff seeks damages against Defendants as listed under the "RELIEF" heading
included with these claims for Promissory Estoppel for Defendants' promising a written
"settlement agreement" for the sole purpose of enticing Plaintiff into not pursuing legal relief
from the courts regarding his EEOC complaint of April 2017, then, breaking their promise after
Plaintiff relied on the Defendants' promise, dropping his legal challenge in lieu of Defendants'
promise and forfeiting his right to pursue relief through the courts, as the window for filing a
discrimination lawsuit had since closed.

## TENTH CAUSE OF ACTION

**For Retaliatory Discharge in Violation of Public Policy—Against Defendants State of
Wyoming, WDOC, and A&I Human Resources.**

188. Plaintiff incorporates the allegations set forth in paragraphs 1 through 187, inclusive, as if
fully set forth herein.

189.  Defendants retaliated against Plaintiff by violating the ADA, Rehabilitation Act, FMLA, and
Title VII of the Civil Rights Act by terminating Plaintiff's employment on June 23, 2020 as set
forth in the preceding Causes of Action from paragraphs 1 through 186.

190.  Defendants were required to continue in the interactive process to provide Plaintiff with a
suitable reasonable accommodation for his disability conditions under the ADA and the
Rehabilitation Act but refused to do so, instead terminating the Plaintiff's employment.

47

191.  Plaintiff's attorney filed a timely request for hearing before the Wyoming Office of Administrative Hearings (OAH) on or about July 7, 2020.  The AG's Office filed its answer on or about July 15, 2020.  From on or about July 15, 2020 through May 2020, approximately ten (10) months, no OAH hearing had been scheduled for Plaintiff's appeal.

192.  In or around May 2020, Plaintiff's attorney advised him that the damages that Plaintiff had incurred to this point were not recoverable under the OAH process and advised Plaintiff to withdraw from the OAH hearing process, which was never scheduled, and to pursue the significant damages caused Plaintiff by the Defendants' unlawful actions through the Court.

193. As a direct, foreseeable, and legal result of Defendants' Retaliatory Discharge in Violation of Public Policy of Plaintiff, Plaintiff has suffered, and continues to suffer, overall economic losses in earnings, job benefits, and other expenses.

194.  As a further direct, foreseeable, and legal result of the Defendants' Retaliatory Discharge in Violation of Public Policy of Plaintiff, Plaintiff has suffered, and continues to suffer, indignity, mental anguish, humiliation, emotional distress, nervousness, tension, inconvenience, and loss of enjoyment of life.  Additionally, Defendants' have significantly aggravated Plaintiff's disability conditions, drastically impairing Plaintiff's ability to function in everyday life.

195.  Plaintiff seeks damages against Defendants as listed under the "RELIEF" heading, included herein, for Retaliatory Discharge in Violation of Public Policy—the ADA, Rehabilitation Act, FMLA, and Title VII of the Civil Rights Act.

## RELIEF

WHEREFORE, Plaintiff David Lee Shulick demands judgment and relief as follows:

1.  Declaring that the acts and practices claimed of here are violations of the Americans with

Disabilities Act, Rehabilitation Act, Age Discrimination in Employment Act, Civil Rights Act

Family Medical Leave Act, Wyoming Occupational Health and Safety Act; and that Defendants

are liable for Intentional Infliction of Emotional Distress, Breach of Contract - Employment,

Promissory Estoppel, and Retaliatory Discharge in Violation of Public Policy.

2.  Enjoining and permanently restraining the violations by Defendants of the Americans with

Disabilities Act, Rehabilitation Act, Age Discrimination in Employment Act, Family Medical

Leave Act, Civil Rights Act, and Wyoming Occupational Health and Safety Act; and Defendants'

liability for Intentional Infliction of Emotional Distress, Breach of Contract - Employment,

Promissory Estoppel, and Retaliatory Discharge in Violation of Public Policy.

3.  For back pay and front pay and for overall economic losses in earnings, bonuses, job

benefits and expenses, according to proof at time of trial;

4.  For compensatory damages for mental and emotional distress, worry, indignity, mental

anxiety, mortification, depression, shame, grief, inconvenience, loss of enjoyment of life,

drastically impairing Plaintiff's ability to function in everyday life, and

other pecuniary losses, all to Plaintiff's damage in a sum to be shown at time of trial;

5.  For Punitive damages;

6.  For attorney/legal fees and costs in an amount determined by the court to be reasonable;

7.  For prejudgment interest on all damages; and

8.  For any other relief that the court considers proper.

11/02/2021
DATE

David Lee Shulick
Pro Se Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify a copy of the forgoing Waiver of the Service of Summons and Plaintiff's

Civil Complaint against State of Wyoming, Wyoming Department of Corrections, Administration

& Information – Human Resources, and Wyoming Workforce Services was mailed/delivered to

Bridget Hill, Attorney General, State of Wyoming, 109 State Capitol, Cheyenne, WY  82002 on

November 2, 2021.

David Lee Shulick

# EXHIBIT

# "A"

# EEOC NOTICE OF RIGHT

# TO SUE

EEOC Form 161 (11/2020)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:   **David L. Shulick**
      **P.O. Box 247**
      **Rawlins, WY 82301**

From:   **Denver Field Office**
        **950 17th Street**
        **Suite 300**
        **Denver, CO 80202**

[ ]   *On behalf of person(s) aggrieved whose identity is*
      *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **541-2020-02182** | **Christopher D. Padilla,**<br>**Supervisory Investigator** | **(720) 779-3606** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*i 'tau'j*

**for Amy Burkholder,**
**Director**

August 09, 2021

*(Date Issued)*

Enclosures(s)

cc:   **Jesse Naiman**
      **Senior Assistant Attorney General**
      **WYOMING DEPT. OF CORRECTIONS**
      **2424 Pioneer Ave. 3rd Floor**
      **Cheyenne, WY 82002**



**POSTAL SERVICE** ® | **MAIL**

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® in ___ for domestic and many international destinations.
- Limited internation___
- When used interna___

*Insurance does not cov___
Domestic Mail Manual a___
** See International Mail ___                                            ___erage.

EXPECTED DELIVERY DAY: 11/05/21

USPS TRACKING® #

9505 5106 0597 1306 3256 08

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSURED



PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

**PRIORITY**
★ **MAIL** ★



**UNITED STATES**
**POSTAL SERVICE** ®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:

David L. Shulick
P.O. Box 247
Rawlins, WY 82301

TO:

U.S. District Court Clerks office
2120 Capitol Ave., Room 2131
Cheyenne, WY 82001

Label 228, March 2016          FOR DOMESTIC AND INTERNATIONAL USE

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.